OOLEY *v.* COLLINS.

1. Liens—Borrowing Money—Finding of Trial Court—Evidence.
   Finding of trial court that defendant mortgagors had not borrowed money from plaintiff as claimed by her in suit to impress a lien on property involved is not disturbed under record presenting a question of fact as to whether plaintiff had loaned the money to such defendants, there being no convincing reason for reversing the trial court in such matter.

2. Trusts—Constructive Trust.
   A constructive trust will not be imposed upon property owned by parties who have in no way contributed to the reasons for imposing such a trust.

3. Same—Constructive Trust—Borrowing Money.
   A constructive trust may not be imposed upon property as against former mortgagees thereof, defendants, where money which plaintiff claimed she loaned to them was not shown to have been borrowed from her by such defendants.

4. Fraudulent Conveyances—Recording—Notice.
   A subsequent purchaser who has his deed first recorded is presumed to be a bona fide purchaser without notice unless the contrary is made to appear (CL 1948, § 565.29).

5. Notice—Burden of Proof.
   The burden of proving notice, either actual or constructive, is on the party alleging it.

---

References for Points in Headnotes

[1] 33 Am Jur, Liens § 22.
[1, 3] Rights and remedies of one who advances money to purchase real estate under an oral agreement by the vendee to give a mortgage thereon as security. 18 ALR 1098.
Lien on, or trust in respect of, land, as security for repayment of money loaned to the purchaser and used in paying for the property without express agreement for security thereon. 60 ALR 1240.
[2, 3] 54 Am Jur, Trusts § 218 *et seq.*
[4, 6] 24 Am Jur, Fraudulent Conveyances §§ 146, 217 *et seq.*
[5] 39 Am Jur, Notice and Notices § 32.
[7] 11 Am Jur, Conspiracy § 56.
[8] 42 Am Jur, Process §§ 75, 77.
[10] 14 Am Jur, Costs § 29 *et seq.*

6. FRAUDULENT CONVEYANCES—NOTICE—BURDEN OF PROOF.

   Plaintiff, seeking to impose a lien upon property of which owners of vendor and vendee interest in land contract were defendants, *held*, not to have sustained her burden of proof that such defendants were not purchasers of the property in good faith (CL 1948, § 565.29).

7. CONSPIRACY—PRIMA FACIE CASE.

   A suit based on conspiracy to defraud may not be maintained against any of the alleged conspirators, where a prima facie case of conspiracy has not been established.

8. JUDGMENT—IN PERSONAM.

   No personal decree may be entered against defendant upon whom personal service was not had and who did not cause his appearance to be entered.

9. COURTS—JURISDICTION—DEBTS—PRESENCE OF SECURITY.

   Courts of a State do not have jurisdiction *in rem* to litigate rights in a debt, merely because of presence in the State of security for payment of the debt, even in the form of a lien upon real estate.

10. COSTS—APPEARANCE—LIENS.

   Costs are granted such defendants as have entered appearance in suit to impose a lien, where bill is dismissed.

Appeal from Van Buren; Mosier (Carl D.), J. Submitted October 12, 1955. (Docket No. 79, Calendar No. 46,559.) Decided December 1, 1955.

Bill by Hermie Ooley against Edward Collins, Joseph T. Pawlowski, Olga M. Pawlowski, Gorden J. Miller, Lucile Miller, Carl A. Anderson, Jr., and Alice K. Anderson to establish lien on certain real estate. Bill dismissed. Plaintiff appeals. Affirmed.

*David Anderson, Jr.,* for plaintiff.

*Williams & Williams* (*Lewis R. Williams, Jr.,* of counsel), for defendants Miller.

*Joseph T. Pawlowski,* for defendants Pawlowski.

*Seymour, Seymour & Hughes* (*Julian E. Hughes,* of counsel), for defendants Anderson.

SHARPE, J. This is a chancery action to impress a lien upon certain real estate. On January 16, 1952, plaintiff, Hermie Ooley, filed a bill of complaint in the circuit court of Van Buren county. Plaintiff's bill of complaint and her testimony alleges that on and prior to December 23, 1949, Gorden J. Miller and Lucile Miller, his wife, were the owners of a parcel of real estate in Van Buren county which was subject to a mortgage, which mortgage had been foreclosed in equity and sold on September 3, 1949; that plaintiff is and has been a resident of Chicago, Illinois, and has known defendant Edward Collins for a period of about 8 years; that she and Edward Collins spent a few days with the Millers at their home and place of business during the Thanksgiving period of 1949; that while visiting the Millers she learned of the mortgage, its foreclosure, and sale; that on this occasion she told the Millers and Collins that she had about $17,000 which she was willing to advance in order to redeem the premises from the foreclosure sale; that the Millers told her that if she advanced that amount they would give her a warranty deed of the premises, subject to a contract of repurchase in 1 year; that she obtained a cashier's check by the use of her own funds in the sum of $17,510, made payable to Gorden Miller; that the draft was delivered to Edward Collins who took it to the Millers, and the mortgage was redeemed on December 23, 1949; that Collins and the Millers conspired together to cheat and defraud plaintiff, and in furtherance of said plan did on December 23, 1949, cause a warranty deed to be executed by the Millers to Edward Collins, which deed was recorded in the office of the register of deeds; that on February 17, 1950, Edward Collins entered into a contract of sale with Carl A. Anderson, Jr., and Alice Anderson, and on said day executed a warranty deed to the Andersons which was recorded on February

21, 1950; that on or about August 12, 1950, Edward Collins conveyed said premises to Joseph T. Pawlowski and Olga M. Pawlowski, husband and wife, by quitclaim deed, and assigned to the defendants Pawlowski his interest in the so-called Anderson contract; that on or about February 18, 1950, Edward Collins paid to plaintiff the sum of $5,000, and that no other part of said indebtedness has been paid; that upon said premises is located a tavern, a restaurant, and a number of cottages.

The Millers filed an answer to plaintiff's bill of complaint in which they admit they redeemed the premises with the cashier's check furnished by plaintiff, but deny that they had any part in the scheme to defraud plaintiff.

Joseph T. Pawlowski filed an answer to plaintiff's bill of complaint in which he denies that he or his wife had any knowledge as to any plan or scheme of Edward Collins to defraud plaintiff, and that at the time he and Olga M. Pawlowski, his wife, acquired their interest in the premises they had no knowledge or information that plaintiff had or claimed any interest in the premises.

Defendants Carl A. Anderson, Jr., and Alice K. Anderson, his wife, also filed an answer to plaintiff's bill of complaint in which they deny that they knew of or took part in any scheme to defraud plaintiff, and that at the time of acquiring their interest in the premises they had no knowledge that plaintiff had or claimed any interest in the premises.

The record shows that defendant Edward Collins was not personally served with summons, nor did he enter his appearance in the case. It appears that Edward Collins left the State of Michigan on or about August 18, 1950. It also appears that on the day plaintiff's bill of complaint was filed, plaintiff's attorney filed an affidavit reciting that defendants Pawlowski were nonresidents of the State of Michi-

gan, but resided in the State of Indiana, and that it could not be ascertained in what State or country defendant Edward Collins resided. Based on this affidavit, an order of publication was entered and published in a newspaper in Van Buren county for the required publication, in which order defendant Edward Collins was named as a defendant. It also appears that on or about February 18, 1950, defendant Collins paid plaintiff the sum of $5,000, and also about that time the further sum of $700, which $700 was reborrowed by Collins and the Millers a few months later.

The cause came on for trial, at which time plaintiff testified:

"I had met the Millers that summer, but we were invited to their home for Thanksgiving dinner in the fall of 1949. I went to their home at that time. We stayed all night. By we, I mean Ed Collins and myself. This home is out at Sister Lakes and the dinner was given at the Rendezvous and that night we spent the night in their home. This was near the Rendezvous.

"*Q.* On that visit, did you have any conversation with Mr. and Mrs. Miller concerning this Rendezvous property?

"*A.* Well, I had heard that they had this mortgage against it and Ed had told me all about it because he was better acquainted with the Millers than I was. And when we were there at Thanksgiving, they had just a short period of time to make up this —to get this mortgage straightened out and I thought it was a nice place to—   *   *   *

"*A.* Well, the Millers were very much upset and so we were talking it over and I said well, I had $17,000 but that wouldn't be enough to cover this mortgage. And Mr. Miller said, well, perhaps they could get the rest somewhere else in the meantime. And that was all for that time.

"And then he made an agreement to come to my apartment about 2 weeks later when Mr. and Mrs. Miller visited my place and when this agreement was made.   *   *   *

"*A.* Well, Mr. Miller had stated that he would give me a warranty deed on the property and that Collins—Ed Collins—he was going to go up there and run the place in the meantime and I was going to remain in Chicago until they got set.   *   *   *

"*Q.* Just tell us what was said about Miller's repurchasing the property.

"*A.* After the period of a year, they could buy it back.   *   *   *

"After the redemption from this foreclosure, Collins went into a business adventure. He went to Seymour, Indiana, with the Millers for a period of about 2 months and then that fell through. And then they went to Indiana to South Bend and they were operating until the fall of the year. They were operating a cafe. They operated the cafe up until the time Collins left. Between the redemption from this foreclosure and when Collins left the Millers and Collins were in business together.   *   *   *

"*Q.* Now, prior to that, had you had any telephone communications with Mr. Miller?

"*A.* Well, as quick as Collins had left, he kept calling me several times a day and wanting to know where he went and I hadn't seen him and she was telling me that he was—that he had made a quitclaim deed with Mr. Pawlowski and naturally I didn't know anything about it because I hadn't seen him.

"*Q.* But Mrs. Miller called you on the phone and told you that Collins was dealing with Pawlowski, is that right?

".*A.* That's right.   *   *   *

"*Q.* You offered Mr. Miller $17,510?

"*A.* Yes.

"*Q.* To a man you hardly knew before, isn't that right?

"*A.* Well, with an agreement that I should get the warranty deed. * * *

"I did not agree to give this money to Mr. Collins. I went to the bank with Mr. Collins and got a cashier's check for $17,510. Mr. Collins was there with me at that time. I gave the check to Edward Collins. I never saw the check again, not until I saw the photostatic copy. I do know what Mr. Collins did with it. I was not there when he disposed of it, but the Millers were in here shortly after that and had told me about the agreement that was made."

On cross-examination plaintiff testified:

"I have never met Mrs. Anderson. I have never met Mr. Carl Anderson. I never saw them before today in court. I had never seen them at all at any time. At the time Mr. Anderson purchased this property involved in this suit I knew of the transaction. I never went to see Mr. Anderson about it. I never went to see Mrs. Anderson about it."

Joseph J. Nagle, a witness for plaintiff, testified:

"My name is Joseph J. Nagle. I reside in Chicago, Illinois. My occupation is lawyer. I am acquainted with Mrs. Ooley. She is a client of mine. I am acquainted with Gorden Miller. In the summer of 1950 I learned of this transaction of Mrs. Ooley's with Miller and Collins.

"After I learned of that transaction I had a conversation with Gorden Miller in South Bend, Indiana, at his cafe. Collins was not there. The date was August 31, 1950. I discussed this transaction with Mr. Miller at that time.

"*Q.* Will you tell us what the conversation was?

"*A.* Well, I inquired into what took place as to this deal. I asked him all the questions I possibly could and I asked him about this check and what happened on that redemption.

"He said Collins came up there with the money—with this check and they redeemed their property at that time.  And during the conversation he said he talked to Collins and he said, 'Now, I appreciate what Mrs. Ooley has done for me, saving my property, and I want to make out a warranty deed to Mrs. Ooley to my property.'

"And he also said he talked to Collins and Collins said he had got all the papers all made up in advance. He said Collins said, 'Well, I got all the papers all made up in advance and I want you to give me the warranty deed here and I will transfer it over to Mrs. Ooley when I get back to Chicago.' "

At the close of plaintiff's evidence, defendants Andersons' attorney made a motion to dismiss plaintiff's bill of complaint as to the Andersons, for the reason that there was no fraud claimed against these defendants.  The court reserved decision on this motion.

Gorden Miller, one of the defendants, testified:

"On this Thanksgiving day visit my mortgage difficulties were discussed.  She (plaintiff) informed me that she had some money.  I say that she said she would give the money to Collins to help clear up the mortgage foreclosure.  Collins was in no way interested in that property at that time.  He at that time had no difficulty over any mortgage foreclosure.  The difficulty with the mortgage was entirely mine.  * * *

"There was no agreement whatever for any kind of security for any payment discussed at that meeting.  I never discussed any matter of security so far as this money was concerned."

The trial court held that in view of the fact that personal service had not been made on Collins, and because no appearance was made in his behalf, a judgment could not be rendered against Collins.  In an opinion the trial court stated:

"Plaintiff claims a certain sum of money is due her, and prays that the court require that the defendants come to a just and true accounting with plaintiff concerning the sums due her from said defendants and each of them, and that said defendants be decreed to pay plaintiff such sums as might be found to be due. The testimony offered in this case does not permit this court to enter any such decree for accounting, and the testimony relating to the interest, right and title of the defendants in and to the real estate certainly is not sufficient to warrant the entry of any decree for the establishment and foreclosure of a lien based on a constructive trust."

A decree was entered, which provided:

"1. The plaintiff is not entitled to an accounting with the defendants concerning any money alleged to be due the plaintiff from the defendants or any of them;

"2. That no sum of money is due from the defendants or any of them to the plaintiff;

"3. That plaintiff is not entitled to a lien upon that real estate situated in the township of Keeler, Van Buren county, Michigan described as:

"Lots 6 and 7 of Heilds Sister Lakes Subdivision, according to the recorded plat thereof, being a subdivision of Section 32, Town 4 South, Range 15 West, according to the Government Survey thereof;

"4. That the plaintiff is not entitled to have a receiver appointed to take charge of said land and premises or to collect the rents and profits therefrom.

"5. That the plaintiff is entitled to no relief whatsoever in this cause."

Plaintiff appeals and urges that the trial court was in error in holding that the evidence failed to establish an indebtedness from Miller and wife to plaintiff. In support of this claim plaintiff urges that the Millers knew the source of the money that was used to redeem the premises. It should be

noted that plaintiff testified the Millers borrowed from her and agreed to convey to her. Plaintiff's testimony is supported by her witness, Joseph Nagle, who testified that in August, 1950, Gorden Miller told him that the deed ran to Collins instead of plaintiff because Collins was to transfer the property to plaintiff in Chicago. Gorden Miller testified that he borrowed the money from Collins and not from plaintiff, and that he did not know where Collins got the money. He also testified that plaintiff had a warrant issued against Collins for embezzlement, and when she discovered that Collins could not be found, she then for the first time claimed that she loaned the money to the Millers.

It clearly appears that a question of fact is presented upon the issue of whether plaintiff loaned the money to Collins or to the Millers.

In *Minasian* v. *Boyce,* 340 Mich 438, 441, this Court said:

"Notwithstanding the rule that chancery appeals are heard on the record *de novo,* we are always mindful of the advantage possessed by the trial judge in hearing and observing the witnesses and, therefore, accord much weight to his findings."

We find no convincing reason for reversing the trial court upon this issue.

Plaintiff also urges that she is entitled to a lien on the premises involved to secure repayment of the indebtedness. In support of this claim plaintiff urges that Collins was acting as her agent; that he violated his relationship as her agent, and took title in his own name rather than in the name of his principal. Plaintiff assumes that the Millers knew that she had advanced the money to redeem the property, and that the deed to the property was to be made out to plaintiff.

While it is true that a constructive trust may be impressed upon property, without a showing of fraud, where such trust is necessary to do equity or to prevent unjust enrichment, see *Digby* v. *Thorson,* 319 Mich 524, yet such constructive trust will not be imposed upon property owned by parties who have in no way contributed to the reasons for imposing a constructive trust. In our opinion no valid reasons have been advanced for imposing a constructive trust upon the property as against the Millers.

Plaintiff also urges that a lien should be placed upon the premises as against the defendants Pawlowski and Anderson. The theory advanced by plaintiff is that on August 12, 1950, defendants Pawlowski took a quitclaim deed from defendant Collins covering this property, and took an assignment of Collins' interest in the Andersons' land contract and notice of rescission; that defendant Collins in acquiring title to the premises in his own name became a fraudulent grantee and held title impressed with a constructive trust in favor of plaintiff; that the burden was on defendants Pawlowski and Anderson to establish that, in acquiring title from defendant Collins, they did so in good faith and for a valuable consideration. Two reasons are given by plaintiff in support of her claim, namely, that the defendants Pawlowski received a quitclaim deed of the premises and defendants Anderson received a warranty deed of the premises, and that neither of the defendants Pawlowski or Anderson testified as to the consideration paid for the transfer of the property.

We are not in accord with plaintiff's theory relative to the burden of proof. CL 1948, § 565.29 (Stat Ann § 26.547) provides:

"Every conveyance of real estate within the State hereafter made, which shall not be recorded as pro-

vided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quitclaim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof."

In *Holly Lumber & Supply Co.* v. *Friedel,* 271 Mich 425, we held that a subsequent purchaser who has his deed first recorded is presumed to be a bona fide purchaser without notice unless the contrary is made to appear, and that the burden of proving notice, either actual or constructive, is on the party alleging it. See, also, *Federman* v. *Van Antwerp,* 276 Mich 344.

In the case at bar there was an insufficiency of evidence to support plaintiff's claim that defendants Pawlowski and Anderson were not purchasers in good faith.

Plaintiff also urges that the lack of personal service on defendant Collins did not prevent her right to relief. Plaintiff bases her claim on the theory that the Millers and Collins, acting in concert, obtained plaintiff's money, deprived her of security for its repayment, and afterwards used $10,000 which should have been paid to plaintiff to enter business as partners.

Plaintiff urges that it is not necessary to join all conspirators, as an action may be maintained against any one of the conspirators. She relies on *Brown* v. *Brown,* 338 Mich 492. It should be noted that decision in the *Brown Case* is based upon an established conspiracy. In the case at bar the trial court held that a prima facie case of conspiracy was not established, nor were there reasons for estab-

lishing a constructive trust. Because of the findings of fact by the trial court, in which we find no reasons to disagree, the case of *Brown* v. *Brown, supra,* has no application. In the case at bar no personal service was made upon defendant Collins, nor did he cause his appearance to be entered in the cause. In such case no personal decree can be entered against him, see *Booth* v. *Connecticut Mutual Life Insurance Co.,* 43 Mich 299. See, also, *Eisner* v. *Williams,* 298 Mich 215, and *Specialties Distributing Co.* v. *Whitehead,* 313 Mich 696. In the case of *Specialties Distributing Co., supra,* at pp 700, 701, we quoted with approval the following from *Eisner* v. *Williams, supra,* at pp 220, 221:

" 'That controlling issue gives rise to an action *in personam,* not *in rem;* and the Wayne county court cannot adjudicate that controversy without first having obtained jurisdiction of defendant Williams by service of process or voluntary appearance. Plaintiffs, who are nonresidents of Michigan, are not without an available forum. Obviously they can proceed in a Florida court where Williams is domiciled, or in any other court which can obtain personal jurisdiction over him.'

"It was also said:

" 'Further, presence in a State of security for payment of a debt does not in itself give the courts of that State jurisdiction *in rem* to litigate rights in the debt; and this has been held notwithstanding the security was in form a lien upon real estate. *State, ex rel. Bowling Green Trust Co.,* v. *Barnett,* 245 Mo 99 (149 SW 311) ; *Williams* v. *Fischlein,* 144 App Div 244 (129 NYS 129) ; and *Williamson* v. *Falkenhagen,* 178 Minn 379 (227 NW 429).' "

Plaintiff's remedy if any is against Collins in a jurisdiction where process can be personally served, or by entering in the cause.

The decree dismissing plaintiff's bill of complaint is affirmed, with costs to such defendants who have entered their appearance in the cause.

CARR, C. J., and BUTZEL, SMITH, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.