*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0336P (6th Cir.)
File Name: 00a0336p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

CENTRAL STATES,
SOUTHEAST & SOUTHWEST
AREAS PENSION FUND, an
employee welfare benefit
plan, et al.,
          *Plaintiffs,*


    *v.*


JoANN M. HOWELL,
    *Defendant-Appellee/*
    *Cross-Appellant,*


SHERYL L. TURCOW;
KENNETH N. HOWELL; DAVID
B. HOWELL,
    *Defendants-Appellants/*
    *Cross-Appellees.*

Nos. 98-4025/4026

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 97-07031—David A. Katz, District Judge.

Argued: March 14, 2000

Decided and Filed: September 25, 2000

1

Before:  JONES, BATCHELDER, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Dennis P. Strong, Sylvania, Ohio, for Appellants. John B. Fisher, MOLLENKAMP & FISHER, Toledo, Ohio, for Appellee. **ON BRIEF:** Dennis P. Strong, Sylvania, Ohio, for Appellants.  John B. Fisher, MOLLENKAMP & FISHER, Toledo, Ohio, for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.  JoAnn and Kenneth Howell were married on April 28, 1978.  Kenneth had three children by a prior marriage – Sheryl, Neil[1] and David.  At the time of his death, Kenneth was covered by three life insurance policies.  Two of the policies, issued by private insurers, are not governed by ERISA.  The remaining policy – the Central States Southeast and Southwest Areas Health & Welfare Fund ("Central States") policy – is part of an employee benefit welfare plan governed by ERISA.

On December 21, 1994, JoAnn filed for divorce in Monroe, Michigan.  The domestic relations court in Michigan entered an order on January 17, 1995, prohibiting both JoAnn and Kenneth from "acting to dispose of, to destroy, sell, transfer, or conceal any of the marital assets of the parties" during the

_____

[1]Named party, Kenneth N. Howell, refers to himself as Neil.  To avoid confusion between the deceased Kenneth Howell and the Kenneth N. Howell who is a party to this appeal, Kenneth Howell, the father, will be referred to as Kenneth, and Kenneth Howell, the son, will be referred to as Neil.

or not she receives the proceeds from his life insurance policy. *See Sears v. Gidday*, 2 N.W. 917 (Mich. 1879).

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court awarding the proceeds of the non-ERISA policies to JoAnn Howell and assessing the burial costs to JoAnn Howell. However, we REMAND the case for further consideration of whether the equities are such that the district court should impose a constructive trust on the ERISA plan proceeds for the benefit of JoAnn Howell.

pendency of the divorce proceedings. Notwithstanding this order, Kenneth changed the beneficiary designation on all three life insurance policies from JoAnn to his children. Kenneth died on February 20, 1996, while the divorce was still pending in Michigan. His death mooted the pending divorce proceeding, leaving Kenneth's marital status unchanged.

After Kenneth's death, it was discovered that the death certificate erroneously indicated his marital status as "divorced." The mistake was ultimately corrected, but not before Kenneth's children presented the erroneous death certificate to all three insurers as part of the proof of their claim for the proceeds of the policies. The two non-ERISA policies paid the benefits to the children. Central States, however, was concerned as to the rightful beneficiary of its policy, so it initiated this action in the United States District Court for the Northern District of Illinois, Eastern Division, on October 18, 1996.

In its Complaint for Interpleader, Central States alleged that jurisdiction was proper in federal court because the insurance benefits at issue were governed by ERISA.[2] Central States also alleged that venue would be proper in the district court in Illinois, where the plan was administered. The Illinois court accepted Central States' payment of $30,000 (the amount of the insurance benefits at issue under the ERISA plan) and dismissed Central States as a party. Upon the dismissal of Central States, the case was transferred to the Northern District of Ohio, Western Division, pursuant to the agreement

---

[2] We have explicitly held that the federal courts have jurisdiction over an action for interpleader to determine the proper beneficiary of benefits payable from an ERISA employee welfare plan. *See Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415, 418 (6th Cir. 1997) ("In sum, Met Life has properly asserted a cause of action pursuant to 29 U.S.C. §1132(a)(3)(B)(ii), and this action arises under federal law. Therefore, it does not matter whether appellants have standing to assert an ERISA cause of action.")

of the remaining parties, JoAnn Howell and Kenneth Howell's children.

After the case was transferred to Ohio, JoAnn filed a cross-claim against the children asserting that the proceeds from the two non-ERISA life insurance policies had been improperly paid to the children. On August 19, 1997, JoAnn moved for summary judgment on all the claims. The district court, exercising both original jurisdiction over the ERISA claim and supplemental jurisdiction over the state law claims, held that the proceeds of the two non-ERISA policies had been improperly paid to the children but that the children were entitled to the proceeds from the ERISA policy. Because the children had already received the proceeds from the non-ERISA policies and because that amount exceeded the $30,000 the children were entitled to receive from the ERISA policy, the district court ordered that: (1) the clerk of courts pay JoAnn Howell the $30,000 that had been previously deposited by Central States, and (2) the children pay JoAnn the difference, each child being responsible for his or her 1/3 share.

Both JoAnn and the children sought reconsideration of the district court's decision as to their respective rights to the insurance proceeds. In addition, the children sought to have the district court credit them with having paid for the decedent's burial expenses and to reduce the sum payable to JoAnn by that amount. The district court agreed with the children and adjusted its order on July 27, 1998.[3] All other claims for reconsideration were denied. A timely notice of appeal was filed on August 24, 1998.

[3]The two non-ERISA policies paid benefits to the children totaling $45,462.17. The value of the Central States policy was $30,000, and the burial expenses paid by the children for Kenneth's burial totaled $14,282.55. Upon assigning the burial expenses to JoAnn, the district court ordered each of the children to pay JoAnn the following amounts – Sheryl, $393.21; Neil, $393.21; and David, $393.20.

In this case, the JoAnn Howell seeks to impose a constructive trust on Kenneth Howell's ERISA welfare benefit plan benefits. Kenneth Howell changed the beneficiary designation in accordance with the plan documents. On this issue, our precedents are clear – the beneficiary card controls the person to whom the plan administrator must pay the benefits.[5] However, we hold today that once the benefits have been released to the properly designated beneficiary, the district court has the discretion to impose a constructive trust upon those benefits in accordance with applicable state law if equity so requires. The district court's opinion did not fully discuss the equities among the parties because it apparently believed that ERISA precluded it from imposing a constructive trust. We therefore REMAND this case for the district court's consideration of the equities under applicable Michigan state law. However, in so doing, we express no opinion whatsoever as to how those equities lie.

III. *The Burial Costs*

JoAnn Howell contends that she was wrongly assessed the burial and funeral costs that the children paid on their father's behalf. JoAnn argues that she should be assessed the funeral costs *only if* she is awarded the proceeds from all three policies. This argument is wholly without merit. JoAnn vigorously asserts her status as Kenneth's wife to claim the marital property as a result of his death. As Kenneth's wife, JoAnn is responsible for his burial costs regardless of whether

[5]We note that the Ninth Circuit has held that ERISA does not preempt the imposition of a constructive trust on ERISA welfare plan benefits even *before* distribution of the benefits to a plan beneficiary. *See Emard v. Hughes Aircraft Co.*, 153 F.3d 949 (9th Cir. 1998). However, at least as to the designation of plan beneficiaries, the Ninth Circuit's rule runs afoul of our bright line rule that the name on the beneficiary card controls the payment of benefits, and we expressly reject any reading of this opinion that would erode the rule we set forth in *McMillan v. Parrott*, 913 F.2d 310 (6th Cir. 1996) and its progeny.

garnishment proceedings. *See Mackey v. Lanier Collection Agency and Serv., Inc.,* 486 U.S. 825, 831-2 (1988)(". . . Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits.")  When the Supreme Court considered the propriety of allowing a state to impose a constructive trust upon ERISA-plan benefits, the Court stated, "We see no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case." *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 372 (1990). However, the High Court distinguished between ERISA's anti-alienation provision governing employee welfare benefit plans, such as the one presented in *Mackey*, and the provision governing pension plans, such as the one presented in *Guidry*. On that distinction, the Court concluded that a constructive trust could not be imposed against an ERISA *pension* plan. *See Guidry*, 493 U.S. at 371-72.

On remand from the Supreme Court, the Tenth Circuit considered whether a constructive trust could be imposed upon ERISA pension plan benefits *after* they had been distributed to the beneficiary. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078, 1081-83 (10th Cir. 1994) (*en banc* decision after remand from the U.S. Supreme Court, *Guidry,* 493 U.S. at 365). The Tenth Circuit recognized that the anti-alienation provision of ERISA precluded the imposition of a constructive trust *before* distribution of benefits to the beneficiary, but it held that nothing in the legislative scheme prevented the imposition of a constructive trust *after* the benefits were paid to the beneficiary of the pension benefits. *See id.* at 1086. We find the Tenth Circuit's reasoning persuasive. Today, we hold that once the benefits of an ERISA employee welfare benefit plan have been distributed according to the plan documents, ERISA does not preempt the imposition of a  constructive trust on those benefits.

## *ANALYSIS*

We review a district court's grant of summary judgment de novo. *See Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 409 (6th Cir. 1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

### I. *The Non-ERISA Policies*

At the time Kenneth Howell designated his children as his beneficiaries to the non-ERISA life insurance policies, he was subject to an order from the state domestic relations court that precluded him from disposing of any marital asset while his divorce was pending. We must therefore consider whether Kenneth's change in beneficiary on those non-ERISA policies violated state law and what effect such violation would have under applicable state law. The Howell's divorce was being adjudicated in the Michigan state courts. Thus, the effect of Kenneth's failure to comply with the state court injunction must be analyzed under Michigan law.

We have previously considered this precise issue under Michigan law. *See Candler v. Donaldson*, 272 F.2d 374 (6th Cir. 1959). In *Candler*, an interpleader action was brought to determine whether the proceeds of a non-ERISA insurance policy should be paid to the insured's wife or mother. The insured's wife had previously been the named beneficiary on the insurance policy at issue. The insured filed for divorce on in Oakland County, Michigan, and three months later, the

state court issued an injunction against the insured ordering him to desist and refrain from "selling, assigning, encumbering, hypothecating, mortgaging, concealing, giving away, or in any manner disposing of any of the properties and assets of either or both of the parties hereto." *Id*. at 376. In contempt of the injunction, the insured changed the beneficiary designation on the policy from his wife to his mother. Before the conclusion of divorce proceedings, the insured died.

The district court held that the change in beneficiary was valid and awarded the benefits to the decedent's mother because the wife had only a contingent interest in the proceeds. *See id.* at 376. We reversed and remanded the case, finding that "[u]nder the Michigan statutes[,] the policy herein involved was part of the property of the husband that was to be considered by the Court in making such final order." *Id.* at 377. Because the apparent purpose of the state court order was to maintain the status quo between the parties until a final adjudication of the property division could be completed, we concluded, "If the change in beneficiaries had not been made, the wife would have been entitled to the proceeds of the policy upon the death of the insured. Equity considers that as done which ought to be done." *Id. Candler* is undistinguishable on its facts from the case at bar. Thus, unless Michigan law has changed since 1959, *Candler* would indicate that Kenneth's wife, not children, should have received the proceeds from the two non-ERISA life insurance policies.

At least two Michigan cases have been published dealing with this issue since 1959, but neither of them requires reversal of the district court's decision. In 1965, the Supreme Court of Michigan considered the issue. *See Webb v. Webb,* 134 N.W.2d 624 (Mich. 1965). Under facts substantially similar to those presented in this appeal, the trial court found that the husband, who had changed his life insurance beneficiary and then died before the divorce had become final, had violated the injunction that restrained him from

naming the parties, the Michigan court order did not provide *any* of the required information, e.g., Kenneth's address, the amount or percentage of the participant's benefits to be paid by the plan, the number of payments or durational period of the order, or the name of the plan. This injunction neither literally nor substantially complied with the requirements set forth in Section 1056.

Therefore, the district court correctly concluded that the domestic relations court's order was preempted by ERISA. Because Kenneth's beneficiary designation complied with the requirements in the Central States' plan documents, Central States' administrator was obligated to pay the insurance proceeds to the named beneficiaries – Kenneth's children.

Resolving Central States' claim does not end our inquiry, however. JoAnn Howell argues that because Kenneth violated the Michigan domestic relations court order, his wrongdoing entitles her to the equitable remedy of a constructive trust imposed upon the $30,000 ERISA plan proceeds.

It is clear that the law of this Circuit requires the ERISA plan administrator to pay out plan proceeds in accordance with the ERISA plan documents. However, there is no precedent binding on this Court on the issue of whether, once the beneficiary is determined, ERISA preempts all causes of action and possible remedies based upon state law that might be traced to the ERISA plan proceeds. *See Hendon*, No. 96-6233, 1998 WL 199824 (6th Cir. Apr. 13, 1998) (unpublished decision holding that state law breach of contract and conversion claims were preempted); *see also Pressley v. Metropolitan Life Ins. Co.*, 729 F.Supp. 570, 572 (E.D. Mich. 1990) (district court decision holding that "state law claim based upon an alleged constructive trust is preempted by ERISA.").

The U.S. Supreme Court held that the benefits in an ERISA employee welfare benefit plan can be subject to state

In 1997, we recognized an exception to ERISA's preemption of state divorce decrees when we held that "29 U.S.C. §1144(b)(7) excepts QDROs [qualified domestic relations orders] from ERISA preemption with respect to welfare plans as well as pension plans." *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 421 (6th Cir. 1997); *see also Metropolitan Life Ins. Co. v. Puzjak*, No. 96-2557, 1998 WL 180573 (6th Cir. Apr. 9, 1998) (following *Marsh*). Therefore, before concluding that the Michigan court's restraining order was preempted, we must consider whether the order satisfies the requirements of a QDRO.

The requirements for a state court order to be treated as a QDRO are set forth in 29 U.S.C. §1056(d)(3):

(B)(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant, and (II) is made pursuant to a State domestic relations law (including a community property law).

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and (iv) each plan to which such order applies.

29 U.S.C. §1056(d)(3).

As the district court properly concluded, the injunction entered by the domestic relations court did not comply with the requirements of Section 1056 (d)(3)(C). Other than

disposing of property. The trial court ordered a return to the status quo, and the Supreme Court of Michigan affirmed. *See id.* at 626-7.

In 1979, a Michigan appellate court considered the issue again. *See Irvin v. Irvin*, 286 N.W.2d 920 (Mich. Ct. App. 1979). Again, under facts substantially similar to those before us in this appeal, the husband changed the beneficiary on his life insurance policy in violation of a restraining order and died before the divorce had become final. In this case, however, the trial court declined to impose a constructive trust in favor of the estranged wife. *See id.* at 921. The reviewing court confirmed that under *Webb*, the trial court had the power to order a return to the status quo. *See id.* However, the reviewing court found no error in the trial court's election not to order a constructive trust, stating, "In all likelihood, she [the estranged wife] was put in a better position than she would have enjoyed had [the husband] obeyed the injunctive order and had the divorce action proceeded to judgment." *Id.* at 922.

The children in this appeal argue strenuously that because JoAnn agrees that she received 90% of the marital property as a result of Kenneth's death, the district court was foreclosed by *Irvin* from imposing a constructive trust in JoAnn's favor. This argument is without merit. There is nothing in *Irvin* that mandates the trial court to rule either way when faced with a situation such as this. Imposition of a constructive trust is an equitable remedy. In determining whether to impose a constructive trust, the trial court must necessarily weigh the equities to prevent injustice in a particular case. *See Irvin*, 286 N.W.2d at 921 ("A constructive trust is a remedial equitable device employed to prevent injustice in a particular case. A court of equity will impose a constructive trust only if conscience demands it." (citations omitted)). Thus, the children's reliance upon one factor – that JoAnn received 90% of the marital estate – is not dispositive of the matter. Here, the district court considered the entire equities of the case and concluded it was appropriate to award JoAnn the

proceeds of the two non-ERISA policies.[4]    In light of the Michigan state precedents, we find no error in this conclusion.

II.    *The ERISA Policy*

Central States initiated this action to determine the rightful beneficiary of the proceeds of the ERISA life insurance policy it administered for the insured's employer.  To answer this question, we must consider the preemptive reach of ERISA.

The Employee Retirement Income Security Act of 1974 is the principal federal statute that governs employee benefit plans.  ERISA plans fall generally into two categories -- "employee pension benefit plans" and "employee welfare benefit plans."  *See* 29 U.S.C. §1002.  The Central States insurance policy is an employee benefit welfare plan that is governed by ERISA.

The law of ERISA expressly preempts all state laws which "relate to" an ERISA plan.  *See* 29 U.S.C. §1144(a).  This preemption applies to all state law, whether legislative or judge-made.  We must therefore determine whether the Michigan state court order restraining Kenneth from changing his beneficiary designation is preempted by ERISA.

We have explicitly and repeatedly held that state court divorce decrees purporting to affect the benefits payable from an ERISA plan are preempted.  *See McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir. 1990); *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126 (6th Cir. 1996) (decedent Alvin Pressley); *Czarski v. Bonk*, No. 96-1444, 1997 WL 535773

---

[4]We do not agree with the district court's view that since *Irvin* has not been followed by Michigan's courts, it need not consider *Irvin* in its analysis of this case.  In the absence of any indication that the Michigan Supreme Court would adopt a rule contrary to that enunciated in *Irvin*, a federal court is not free to ignore the pronouncement of a state appellate court on matters of state law.  *See Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997).

(6th Cir. Aug. 28, 1997); *Metropolitan Life Ins. Co. v. Steffey*, No. 96-2239, 1997 WL 705235 (6th Cir. Nov. 4, 1997); *Hendon v. E. I. DuPont de Nemours and Co.*, No. 96-6233, 1998 WL 199824 (6th Cir. Apr. 13, 1998).  In each of the cited cases, however, the surviving spouse had waived the right to receive benefits from the policies as part of a divorce settlement, but the deceased spouse had failed to change the beneficiary card.  In each case, we held that the ERISA plan administrator must pay the ex-spouse the insurance proceeds despite the waiver in the divorce settlement.  Under these circumstances, the law of this Circuit is clear – the beneficiary card controls whom the plan administrator must pay.  *See McMillan*, 913 F.2d at 311-312 ("This clear statutory command, together with the plan provisions, answer the question; the documents control, and those name [the ex-spouse].")

The facts in this case are somewhat different.  Here, Kenneth's ability to change the beneficiary was dictated not by a final divorce decree, but rather by a preliminary injunction entered to maintain the financial status quo until the divorce proceedings could be finalized.  Moreover, the injunction in this case sought to insure that JoAnn *would not* be removed as beneficiary of the policy, as opposed to the cases above in which the divorce decree attempted to insure that the ex-spouse *would* be removed as beneficiary of the policy.  In our view, these are distinctions without a difference.  The power of the domestic relations court's order is not affected by whether the court has affirmatively ordered the insured to change his beneficiary or precluded the insured from making such a change.  Similarly, whether the order is in the form of a final decree or a preliminary injunction, it is still a domestic relations order, issued under the authority of the state court.  *See* 29 U.S.C. §1056(d)(3)(B)(ii) (defining "domestic relations order" to include any judgment, decree or order relating to, *inter alia*, the division of marital property).  The question then becomes whether there is some basis upon which to exempt the order from ERISA's preemptive reach.