**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Christine L. MULLIGAN, Brenda M. Luna, Holly Lynn Awad, and Estate of Daniel D. Awad, Defendants.**

No. 00–10442–BC.

United States District Court,
E.D. Michigan,
Northern Division.

June 28, 2002.

David M. Davis, Hardy, Lewis, Birmingham, MI, for Plaintiff.

Richard O. Milster, Lambert, Leser, Bay City, MI, for Defendants.

Lisa L. Jensen, Ruth L. Noble, Seward, Tally, Bay City, MI, for Holly Lynn Awad.

## OPINION AND ORDER DENYING CROSS–PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LAWSON, District Judge.

This case was commenced as an interpleader action by Metropolitan Life Insurance Company (MetLife), the stakeholder of a death benefit from a policy of insurance on the life of Daniel Awad. Mr. Awad died in April 2000, and his former wife, Holly Lynn Awad, and his two children by a prior marriage, Christine L. Mulligan and Brenda M. Luna, cross-plaintiffs, now compete for the fund of approximately $42,500. On January 22, 2002, this Court entered an Order permitting MetLife to deposit the funds with the Court and releasing MetLife from liability. The matter is before the Court on the motion for summary judgment filed by cross-defendant Holly Lynn Awad. On June 18, 2002, the Court heard the arguments of the parties through their respective counsel in open court. The Court finds that although the judgment of divorce on which the cross-plaintiffs rely as terminating Holly Lynn Awad's interest in the life insurance policy proceeds is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, the proceeds to be paid to Holly as the named beneficiary must be impressed with a constructive trust, and allocation may not occur until the Court conducts a hearing to determine the equities under all the circumstances. The motion for summary judgment, therefore, will be denied.

### I.

On August 22, 1988, Daniel D. Awad was an hourly employee of General Motors. On that day, he designated his then girlfriend, Holly Lynn Meier (now Holly Lynn Awad), as beneficiary to receive the basic group life insurance benefits under GM Group Policy No. 15500 G, administered by Metropolitan Life Insurance Company (MetLife). Holly and Daniel were subsequently married later in 1988.

On May 23, 1995, a Consent Judgment of Divorce was entered in Bay County Circuit Court terminating the marriage between Daniel D. Awad and Holly Lynn Awad. Section VI of the Consent Judgment states that

IT IS HEREBY FURTHER ORDERED AND ADJUDGED that all rights of either party in and to the proceeds of any policy or contract of life insurance, endowment or annuity upon the life of the other in which he or she was named beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective shall hereupon become and be payable to the estate of the owner of such policy, or such named beneficiary as he or she shall affirmatively designate.

Compl., Ex. C, at 2. The beneficiary designation on GM Group Policy No. 15500–G was not changed from "Holly Lynn Meier."

Daniel D. Awad died on April 8, 2000. The life insurance benefits under GM Group Policy No. 15500–G total $42,500.

On May 15, 2000, MetLife received a Statement of Claim for Life Insurance Proceeds from Holly Lynn Awad. On May 23, 2000, MetLife received a Statement of Claim for Life Insurance Proceeds and a Supplemental Statement from Brenda M. Luna, Daniel Awad's daughter. On July 31, 2000, MetLife received a letter from attorney Richard O. Milster, representing Christine L. Mulligan, Brenda Luna, and the Estate of Daniel Awad, notifying Met-Life that he was making a claim on behalf of his clients for the life insurance benefits payable under GM Group Policy No. 15500–G.

MetLife was unable to resolve the dispute between the four claimants. Thus, it filed the this interpleader action on November 20, 2000 and payed the fund into the clerk's depository pursuant to the Court's January 22, 2002 order.

## II.

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. A party opposing a motion for summary judgment must show by affidavits, depositions, or other factual material that there is "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir.2000). The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

A party may support a motion for summary judgment by demonstrating that an opposite party, after sufficient opportunity for discovery, is unable to meet her burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may not merely rely upon the pleadings to oppose a motion for summary judgment but must come forward with affirmative evidence in the form of materials described in Rule 56(c) to establish a genuine issue on a material fact. *Id.* at 324, 106 S.Ct. 2548. Even in complex cases, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476–81 (6th Cir. 1989).

### A.

Daniel's ex-wife, Holly, claims that she is entitled to the life insurance proceeds as a matter of law because she is the named beneficiary on the MetLife insurance policy, and the beneficiary designation in the records of the insurance company must control the distribution. Daniel's daughters, Christine and Brenda, argue that Holly's rights in the insurance proceeds were extinguished by the consent judgment of divorce, which she signed, and which incorporated specific language terminating her interest in favor of Daniel's estate, as required by Michigan law. *See* Mich. Comp. Laws § 552.101(2) ("Each judgment of divorce ... shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the

husband in which the wife was named or designated as beneficiary.... If the judgment of divorce ... does not determine the rights of the wife in and to a policy of life insurance, ... the policy shall be payable to the estate of the husband.")

Title 29 U.S.C. § 1144(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *Egelhoff v. Egelhoff,* 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). A state law "relates to" a plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126, 129 (6th Cir.1996). ERISA does not preempt, however, an action "too tenuous, remote or peripheral [ ] to warrant a finding that the action 'relates to' the plan." *Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.,* 195 F.3d 803, 807 (6th Cir.1999). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991).

In *Egelhoff,* the Supreme Court held that a Washington state statute substantially similar to Michigan's statutory divorce insurance provision was expressly preempted by ERISA and was therefore ineffective to revoke the beneficiary designation of an ex-spouse on her former husband's employer-issued life insurance policy. 532 U.S. at 143, 121 S.Ct. 1322. The Sixth Circuit has "explicitly and repeatedly held that state court divorce decrees purporting to affect the benefits payable from an ERISA plan are preempted." *Central States, S.E. & S.W. Areas Pension Fund v. Howell,* 227 F.3d 672, 676 (6th Cir.2000) (citing cases). It is thus beyond debate that "ERISA requires that a plan administrator discharge his duties 'in accordance with the documents and instruments governing the plan....' 29 U.S.C. § 1104(a)(1)(D)." *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990)

### B.

The Awad daughters contend that even if ERISA controls, as it does here, the state judgment of divorce constitutes a qualified domestic relations order (QDRO) which is an exception to the preemption provisions of ERISA, 29 U.S.C. § 1144(a). Section 1144(b)(7) of ERISA provides that "[s]ubsection (a) of this section shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title)." A QDRO is an order entered in a state domestic relations action that "assigns to an alternate payee the right to [ ] receive all ·or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I). QDROs include orders "relat[ing] to child support, alimony payments, or martial property rights to a spouse, former spouse, child, or other dependent of a participant" or "made pursuant to a State domestic relations law." 29 U.S.C. § 1056(d)(3)(B).

In *Metropolitan Life Ins. Co. v. Marsh,* 119 F.3d 415 (6th Cir.1997), the Court of Appeals held that the ERISA sections defining QDROs apply to pension and welfare plans alike. *Id.* at 421. A life insurance policy issued pursuant to a plan maintained by an employer is a "welfare plan." *See* 29 U.S.C. § 1002(1). However, in order to constitute a QDRO, an order in a state divorce case must substantially

comply with ERISA's requirements. Section 1056(d)(3)(C) states:

A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). Additionally, the order will be found to constitute a QDRO if it

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

29 U.S.C. § 1056(d)(3)(D). Once again, substantial compliance with the statutory terms is required. *See Marsh,* 119 F.3d at 422.

■ In this case, the judgment of divorce entered by the Bay County Circuit Court does specify the "name and last known mailing address" of Daniel Awad and Holly Lynn Awad but does not designate them as "participant" and "alternate payee." That omission alone may not be fatal under a substantial compliance evaluation. The judgment does not "clearly specify" the "amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee" or the "number of payments or period to which such order applies," but since life insurance proceeds are paid in a lump sum, the language of the judgment is sufficient to meet that requirement. *See id.* The fatal defect in the judgment of divorce in this case is that it fails to mention in any limiting way the "plan to which such·order applies." Although, according to *Marsh,* the judgment need not explicitly state, for example, that it refers to GM Group Policy No. 15500–G, it must at least contain some information to permit identification of the plan to which it applies and to avoid ambiguity. *See id.* Here, the judgment refers to "any policy of contract of insurance." Such blanket language cannot be reconciled with the statutory requirement of "clearly specif[ying] . . . each plan to which such order applies." Because the judgment of divorce fails to meet the QDRO statutory requirements, the preemption provisions of section 1144(a) remain effective and the beneficiary designation in the policy controls.

## C.

Finally, Christine and Brenda argue that if ERISA gives controlling force to the beneficiary designation on file with the plan administrator, they have an equitably remedy against Holly Awad after the insurance policy proceeds are paid by the insurance company. Based on the authority of *Central States, Southeast & Southwest Areas Pension Fund v. Howell, supra,* they urge the Court to impose a constructive trust on the policy proceeds, and distribute them according to equitable principles.

In *Central States,* the deceased husband changed the beneficiary designation on a life insurance policy issued as part of an

ERISA welfare plan in violation of a state court injunction issued to preserve the status quo in a divorce case. The husband died while the divorce was pending, and the Court of Appeals held that ERISA required that the insurance policy proceeds be paid to the deceased's children by a former marriage, whom the husband had designated in the beneficiary change form, despite the state court order not to do so. However, the Court then stated:

> [T]here is no precedent binding on this Court on the issue of whether, once the beneficiary is determined, ERISA preempts all causes of action and possible remedies based upon state law that might be traced to the ERISA plan proceeds.

227 F.3d at 678. The Court held that equitable claims relating to the parties competing for the fund, and not involving the plan administrator, are not preempted. Thus, "once the benefits of an ERISA employee welfare benefit plan have been distributed according to the plan documents, ERISA does not preempt the imposition of a constructive trust on those benefits." *Id.* at 678–79. The Court concluded that the "district court has the discretion to impose a constructive trust upon those benefits in accordance with applicable state law if equity so requires." *Id.* at 679.

The Michigan Supreme Court has held that "a constructive trust is strictly not a trust at all, but merely a remedy administered in certain fraudulent breaches of trusts." *Blachy v. Butcher,* 221 F.3d 896, 905 (6th Cir.2000) (quoting *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.,* 259 Mich. 489, 494, 244 N.W. 138, 140 (1932)). A constructive trust may be imposed upon a finding of fraud, concealment, misrepresentation, or any other circumstances that would render an unconscionable outcome or when an inequitable outcome would result. *Blachy,*

221 F.3d at 903–04. A constructive trust may also be imposed "where such trust is necessary to do equity or to prevent unjust enrichment...." *Ooley v. Collins,* 344 Mich. 148, 158, 73 N.W.2d 464, 469 (1955). The trusts' "forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice." *Butler v. Attwood,* 369 F.2d 811, 819 (6th Cir.1966) (quoting *Kent v. Klein,* 352 Mich. 652, 658, 91 N.W.2d 11, 14 (1958)). The party wanting the constructive trust to be imposed has the burden of proof. *Kammer Asphalt Paving Co. v. East China Township Sch.,* 443 Mich. 176, 188, 504 N.W.2d 635, 642 (1993).

It has been suggested that a constructive trust may not be imposed under Michigan law upon a party who did not contribute to the reasons for imposing it, *see Ooley,* 344 Mich. at 158, 73 N.W.2d at 469; however, that rule has not been strictly followed. *See, e.g., Kent v. Klein,* 352 Mich. at 657, 91 N.W.2d at 14 ("Fraud in the inception we do not require, nor deceit, nor chicanery in any of its varied guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld.").

In this case, affidavits by Michael Awad, Michael Salay, and Jay Swanton have been filed with the Court. In his affidavit, Swanton stated that Daniel Awad was one of his best friends; Daniel told him that although Daniel did not have much to leave his children, the life insurance policies would be enough. Similarly, Salay states that Daniel told him he believed his daughters were the beneficiaries of his life insurance policy. Michael Awad was "shocked" to learn that Daniel had not changed the beneficiary designation. Although Holly Awad did not file an affidavit, she contends that she was on friendly terms with Daniel after the divorce. This

view is contradicted by Salay and Michael Awad.

■ The determination of whether a constructive trust should be imposed is a fact-specific inquiry. The Court may not resolve competing factual claims at the summary judgment stage. *See Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 448 (6th Cir.2002). Based upon the affidavits of the parties, a hearing will be necessary to determine whether equity ought to prescribe a result that is different than that required by strict adherence to ERISA's mandate.

### III.

Although ERISA preempts the provisions of the judgment of divorce which purport to extinguish Holly Awad's interest in the disputed life insurance proceeds in this case, the question of whether an equitable remedy applies cannot be decided as a matter of law on this record.

Accordingly, it is **ORDERED** that defendant Holly Lynn Awad's motion for summary judgment [dkt. # 7] is **DENIED**.