**UNITED STATES of America,**
**Plaintiff,**

v.

**CURRENCY $11,331, Defendant,**

**Robert Shannon, Claimant.**

No. 05–73793.

United States District Court,
E.D. Michigan,
Southern Division.

March 27, 2007.

Tauras N. Ziedas, United States Attorney's Office, Detroit, MI, for Plaintiff.

Arlene F. Woods, Farmington Hills, MI, for Defendant and Claimant.

### *OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE CLAIMANT'S ANSWER AND CLAIM, DENYING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT, AND DIRECTING PARTIES TO ADDRESS CLAIMANT'S DEATH*

DAVID M. LAWSON, District Judge.

On October 4, 2005, the government filed an in rem forfeiture complaint against $11,331 seized from Rhonda Reaves–Williamson by the Southfield Police Department during a traffic stop in 2005. The Drug Enforcement Administration (DEA) had received a claim from Robert Shannon, Ms. Reaves–Williamson's father, contesting the forfeiture of the money, and on October 24, 2005, the claimant filed an answer to the complaint. Presently before the Court are the claimant's motion for summary judgment and the government's motion to strike the claim. The government argues that the claimant has no colorable interest in the money and therefore no standing to contest the forfeiture. The claimant maintains that he has an interest in the funds, *inter alia,* by virtue of a constructive trust.

The Court held oral argument on the motion on December 22, 2006. At the hearing, the attorney for the claimant informed the Court for the first time that Mr. Shannon had died on August 15, 2006. The Court ordered the parties to file supplemental briefs on the effect of the death on the viability of the present action. Briefs were filed, but neither party has addressed the procedural issues pertaining to the deceased party. The Court concludes that the claimant has asserted an interest in $10,000 of the seized funds under the theory of constructive trust, and he has no interest in the balance, for which the government may have judgment. However, the case cannot proceed further until the parties address the procedural issue of substituting a proper party for the deceased claimant. Moreover, disputed fact issues preclude summary judgment for the claimant on the $10,000 in which he asserts an interest. Therefore the Court will grant in part and deny in part the government's motion to strike the claim and enter default judgment, deny the claimant's motion for summary judgment, and order the parties to take appropriate steps to bring the proper party before the court.

I.

On January 21, 2005, the Oklahoma Highway Patrol stopped a 1998 Chevrolet van driven by Clarence Williamson, a resident of West Bloomfield, Michigan. The vehicle belonged to Mr. Williamson's cousin, Christel B. Mervin, who was also in the van. Mr. Williamson was in possession of $1,957. A search of the vehicle revealed over $1.5 million in a secret compartment in the van and two guns. Mr. Williamson claimed he did not know how the money came to be hidden in the van.

As a result of this stop, DEA officers obtained search warrants for property owned or controlled by Mr. Williamson in the Detroit area. Mr. Williamson apparently owns a number of properties because he is in the construction business. The claimant says that Williamson often buys condemned property, fixes them up, and rents them out. On January 28, 2005, police officers searched 20594 Woodburn in Southfield. The house is owned by Mr. Williamson, but it is occupied by someone named Carlos Roberson. During the search of this house, officers seized a cash counter, a cell phone, and two 9mm handguns. On January 31, 2005, officers searched 24669 Lafayette Circle in Southfield, where Mr. Williamson and his wife, Rhonda Reaves–Williamson, live. A loaded .38 revolver and an Uzi 40–bullet magazine were found in the house. Several items of personal property were seized from the house, including a refrigerator, a jackhammer, five flat screen television sets, a computer, a microwave, three DVD players, a stereo, seven fur coats, speakers, a fax/copier machine, two camcorders, a massage chair, a snow blower, a generator, and two saws. Also on February 1, 2005, the government seized bank accounts owned by Mr. Williamson and Ms. Reaves–Williamson. No criminal charges have been brought yet against Mr. Williamson or Ms. Reaves–Williamson.

In addition, the Southfield Police conducted a traffic stop of Ms. Reaves–Williamson in Southfield, Michigan on February 1, 2005. Ms. Reaves–Williamson had been staying at a hotel. She testified that she went there to let her children use the pool. DEA officers came to the scene of the traffic stop. The officers claim that Ms. Reaves–Williamson consented to the search, but at her deposition she denied giving consent. Ms. Reaves–Williamson had $11,331 in cash in her possession, which the officers seized. The bulk of the money was in two envelopes containing $5,000 each. The government's complaint alleges that a drug dog was brought to the scene and "indicated strongly to several areas of the vehicle as having been in contact with illegal narcotics." Compl. at ¶ 7(g).

Ms. Reaves–Williamson testified at a deposition that her father, Robert Shannon, the claimant, had loaned her the money in the envelopes. The other $1,331 was hers:

Q. How much was in each envelope?

A. Five thousand.

Q. When you say the loose was yours, what was the stuff in the envelopes?

A. It was—I had borrowed it, just borrowed it.

Q. From?

A. Robert Shannon, my father.

Q. And when did you do that?

A. The night before.

Q. How much did you borrow?

A. Ten thousand.

Q. Did you happen to—well, did he give you the money or did you go see him? How did you get the money?

A. I went and picked it up from him.

Q. At his residence?

A. Yes.

Q. Did you see him when you picked it up?

A. Yes.

Q. At that time did you sign any kind of a promissory note or anything else that would show that you were borrowing money from him?

A. No.

Q. Did you discuss collateralizing the loan in any way; in other words, like if you didn't pay that, he would take some property of yours in exchange?

A. No.

*Id.* at 8–9. The claimant has also admitted in interrogatories that he loaned the money to his daughter:

8. Admit that some or all of the defendant currency was a loan from you to Rhonda Reaves–Williamson:

ANSWER:

8. Claimant admits that the funds were a "loan."

. . .

5. Provide specific details as to your interest in the defendant currency . . .

ANSWER:

5. Claimant submits that he is entitled to the full sum of the funds, which are the subject of this litigation inasmuch as the funds were derived from savings and investments accumulated during the course of the Claimant's 35 years of employment with Ford Motor Company.

Govt.'s Mot. to Strike, Ex. B, Interrogatories. The claimant has submitted a copy of a document from his bank showing he transferred $18,899.73 on January 28, 2005. In the claimant's brief, he states that he gave the money to his daughter because her bank accounts had been seized by the police and she needed money to pay bills. The claimant gave the money to Ms. Reaves–Williamson on January 31, 2005.

No charges have been brought against Ms. Reaves–Williamson, her husband, or her father. Only Robert Shannon has filed a claim to the money; Ms. Reaves–Williamson has not filed a claim. After the government filed its forfeiture complaint, Mr. Shannon filed on November 28, 2005 a "Notice of Claim of Interest and Posting of Bond" in which he asserted a right to the money and offered to post bond to claim the property. As mentioned earlier, the claimant's counsel has now reported that Mr. Shannon died in August 2006. There is no evidence before the Court that an estate has been opened or that a personal representative has been appointed. Neither the government nor an authorized representative of the claimant's estate has filed a suggestion of death as outlined in Federal Rule of Civil Procedure 25(a).

The government filed its motion to strike Mr. Shannon's claim and enter default judgment on June 26, 2006. The claimant filed his motion for summary judgment on July 14, 2006.

## II.

The government alleges that it has a right to forfeit the money seized from Rhonda Reaves–Williamson because it is connected to illegal drug transactions. Federal law provides that money traceable to transactions involving illegal drugs may be seized by the government. 21 U.S.C. § 881(a)(6) (stating that "[t]he following shall be subject to forfeiture to the United States . . .:[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter"). To seize property, the government must show that the property is substantially connected to criminal activity. As the Sixth Circuit has explained:

Under Section 881, the United States bears the initial burden of demonstrating probable cause of "a substantial connection between the property and the underlying criminal activity." *$53,082.00*, 985 F.2d at 250 (quoting *United States v. One 1984 Cadillac*, 888 F.2d 1133, 1136 (6th Cir.1989)). Thus, the United States is required to establish "a reasonable ground for belief, supported by more than mere suspicion, that there is a substantial connection between the seized [property] and an illegal drug transaction." *United States v.*

*$67,220.00 in United States Currency,* 957 F.2d 280, 284 (6th Cir.1992).

*United States v. Certain Real Property Located at 16510 Ashton,* 47 F.3d 1465, 1469 (6th Cir.1995).

The claimant in this case asserts that the government is unable to make the requisite showing that connects the money seized from Ms. Reaves–Williamson to any drug activity, especially the $10,000 loaned by the claimant, which Mr. Shannon withdrew from his own bank account shortly before the traffic stop. The government, however, insists that the Court ought not even reach that question because the matter of standing first must be resolved, *see United States v. $515,060.42,* 152 F.3d 491, 497 (6th Cir.1998) (holding that "claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property"), and Mr. Shannon's proofs fall short because he can show no more than a status as a general creditor.

█ It appears that the government is correct that the issue of standing must be resolved at the threshold. In *United States v. 37.29 Pounds of Semi–Precious Stones,* 7 F.3d 480 (6th Cir.1993), the Sixth Circuit quoted favorably from a decision by the Fifth Circuit declaring that "a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must *first* demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *United States v. $364,960,* 661 F.2d 319, 326 (5th Cir.1981) (emphasis added). Other parts of *Semi–Precious Stones* not relevant here have been overruled by the Supreme Court's decision in *United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), in which the Court held that a title holder of *real* property is entitled to a pre-seizure hearing. The Sixth Circuit acknowledged this point in

*United States v. Certain Real Property Located at 16510 Ashton,* 47 F.3d 1465, 1469 (6th Cir.1995). However, *Ashton* speaks in language that indicates *Semi–Precious Stones* should continue to be applied in cases not involving a title-holding claimant to real property. *See Ashton,* 47 F.3d at 1470 (stating that "[w]e believe these decisions [including *Semi–Precious Stones* ] have been superseded, however, when applied to the factual situation in this case, in light of *Good Real Property,* 510 U.S. 43 [114 S.Ct. 492] (1993)"). Moreover, in an unpublished decision the Sixth Circuit has observed that *Ashton* did not alter the rule that standing is a prerequisite to challenging forfeiture, stating:

> We note that in *United States v. Certain Real Property Located at 16510 Ashton,* 47 F.3d 1465 (6th Cir.1995), this court held that the Supreme Court's decision in *United States v. James Daniel Good Real Property,* 510 U.S. 43 [114 S.Ct. 492, 126 L.Ed.2d 490] (1993), entitles even a nominal owner to a preseizure hearing. The decision in *16510 Ashton,* however, as no bearing on this case, as White has not advanced any claim that the court violated his due process rights when it issued a judgment of forfeiture. *Good Real Property* did not purport to speak to the issue of standing, and therefore, this court could not have, in *16510 Ashton,* overruled the prior precedent of this court recognizing that standing is a necessary prerequisite to a forfeiture challenge.

*United States v. Certain Real Property Located at 16397 Harden Circle,* 145 F.3d 1334 (table), 1998 WL 245991, *3 (6th Cir. 1998) (unpublished). This Court holds, therefore, that the claimant must prove standing before he can challenge the government's seizure of the cash in this case.

The procedures for forfeiture in this case are governed by Civil Asset Forfei-

ture Reform Act of 2000, 18 U.S.C. § 983 (2000) (CAFRA). Under that legislation, "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute," but the person claiming innocent owner status has "the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1). The statute defines an "innocent owner" to include anyone who has an interest in the seized property who "did not know of the conduct giving rise to forfeiture." 18 U.S.C. § 983(d)(2)(A)(i). The statute defines "owner" to be a person with any "ownership interest in the specific property sought to be forfeited," 18 U.S.C. § 983(d)(6)(A), but does not include "a person with only a general unsecured interest in, or claim against, the property or estate of another." 18 U.S.C. § 983(d)(6)(B)(i).

 The claimant in this case does not dispute that he is a general unsecured creditor, as that term is defined under state law. Federal courts look to state law to determine a person's property interest under the civil forfeiture statutes. *See United States v. Certain Real Property Located at 2525 Leroy Lane*, 910 F.2d 343, 347 (6th Cir.1990). In Michigan,

> the only difference between a secured and an unsecured creditor is that relating to the fund or assets to which they are respectively entitled to resort for payment, the former being entitled to resort to a particular fund or portion of the assets, and to be paid in full if the proceeds of such fund or particular property is sufficient for that purpose, to the exclusion of all others, while the unsecured creditor can look only to the general assets, and must share the same equally with the other unsecured creditors.

*Phelps v. Sellick*, 19 F. Cas. 463, 464 (C.C.E.D.Mich.1873). *See also In re Century Boat Co.*, 986 F.2d 154, 156–57 (6th Cir.1993) ("[T]he Internal Revenue Service is an unsecured creditor because neither a tax lien nor encumbered property secures Century Boat's obligation."). However, the claimant raises three issues in defense of the government's argument that establishing only general creditor status should be the end of the standing argument.

First, the claimant points to a Fourth Circuit case as supporting the proposition that even general creditors can show an interest in the seized asset when the government takes *all* of the debtor's property. In *United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir.1987), Christopher Reckmeyer owed his father William $25,000, of which his father allowed repayment in the form of granting an option to purchase a piece of the "Shelburne Glebe" property for the amount of the debt. Christopher subsequently pleaded guilty to several crimes and agreed to forfeit all of his assets to the government under a part of the Continuing Criminal Enterprise Act, 21 U.S.C. § 853. The government then seized "all of Christopher's accounts, the Shelburne Glebe, and the Orme property," *id.* at 202, which amounted to virtually all of Christopher's assets. William filed a claim seeking to recover $25,000, which the district court allowed, and the Fourth Circuit affirmed. The court acknowledged that unsecured creditors generally have an insurmountable obstacle in proving an interest in the debtor's forfeited asset. However,

> That barrier has no impact on the claim of petitioners here ... because, as the government concedes, the order of forfeiture reaches all the discovered and undiscovered assets of Christopher Reckmeyer and the government has seized all of his known assets. In practical terms Christopher's entire estate has been forfeited to the government. Because petitioners' interests necessarily lie within that estate, they meet the

threshold qualification for relief by asserting a legal interest in the property subject to forfeiture.

*Reckmeyer*, 836 F.2d at 205–06. The court explained that "[i]t is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest civil forfeitures." *Id.* at 206 n. 3. That problem is overcome when general creditors, who "enjoy a legal interest in the entire estate of the debtor," *ibid.*, can allege that the entire estate is subject to forfeiture.

■ The claimant's reliance on *Reckmeyer* in this case is misplaced for two reasons. First, that case involved the criminal forfeiture statute, 21 U.S.C. § 853, rather than the CAFRA, which is at issue in this case and specifically defines the term "owner" to exclude general creditors. The criminal statute allows any person with a "legal interest" to bring a claim, which is much broader than the CAFRA section that only allows claims by "innocent owners." *See United States v. 74.05 Acres of Land*, 428 F.Supp.2d 57, 64 (D.Conn.2006) (holding that CAFRA "consolidated the former innocent owner defenses into one new provision, 18 U.S.C. § 983(d), which clarified the definition of an innocent owner and provided a precise definition of the term 'owner' "). Certainly an unsecured creditor has a legal interest in his debtor's property as *Reckmeyer* held, but that does not make him an "innocent owner" under CAFRA.

The second reason *Reckmeyer* provides Mr. Shannon no help is that there is no evidence that Ms. Reaves–Williamson's entire estate has been seized. As the government points out, several parcels of real property in Mr. Williamson's name have not been seized. As Mr. Williamson's spouse, Ms. Reaves–Williamson has rights in these properties. The government may

have seized most of the electronic items Ms. Reaves–Williamson owns and her bank accounts, but that is far different from all "discovered and undiscovered assets" seized from the debtor in *Reckmeyer.*

■ The claimant next argues that he is the owner of the seized funds since legal title of the money never passed to his daughter because she did not give consideration. That argument is unpersuasive because cash is a bearer instrument. Under state law, possession of cash is *prima facie* evidence of ownership:

United States currency is normally considered to be a bearer instrument. See *Ramirez v. Bureau of State Lottery,* 186 Mich.App. 275, 278–279, 463 N.W.2d 245 (1990). Possession of such property is prima facie evidence of ownership and the burden of producing evidence regarding ownership rests upon the person disputing such ownership.

*In re Forfeiture of $19,250,* 209 Mich.App. 20, 27, 530 N.W.2d 759, 762 (1995). Since Mr. Shannon was not in possession of the cash at the time of the seizure, he cannot claim ownership of it absent some other evidence despite the lack or failure of consideration by his daughter.

■ The third ground advanced by the claimant in support of his claim of ownership in the seized cash is based on the theory of constructive trust. He says that he did not intend to transfer funds for his daughter's own benefit but rather the money was intended to pay her creditors. Therefore, he reasons, equity ought to impose a constructive trust on the funds in his favor as the transferee, which would create a legal interest in the money sufficient to confer standing upon him.

■ As this Court has explained previously,

The Michigan Supreme Court has held that "a constructive trust is strictly not a

trust at all, but merely a remedy administered in certain fraudulent breaches of trusts." *Blachy v. Butcher,* 221 F.3d 896, 905 (6th Cir.2000) (quoting *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.,* 259 Mich. 489, 494, 244 N.W. 138, 140 (1932)). A constructive trust may be imposed upon a finding of fraud, concealment, misrepresentation, or any other circumstances that would render an unconscionable outcome or when an inequitable outcome would result. *Blachy,* 221 F.3d at 903–04. A constructive trust may also be imposed "where such trust is necessary to do equity or to prevent unjust enrichment...." *Ooley v. Collins,* 344 Mich. 148, 158, 73 N.W.2d 464, 469 (1955). The trusts' "forms and varieties are practically without limit, being raised by courts of equity whenever it becomes necessary to prevent a failure of justice." *Butler v. Attwood,* 369 F.2d 811, 819 (6th Cir.1966) (quoting *Kent v. Klein,* 352 Mich. 652, 658, 91 N.W.2d 11, 14 (1958)). The party wanting the constructive trust to be imposed has the burden of proof. *Kammer Asphalt Paving Co. v. East China Township Sch.,* 443 Mich. 176, 188, 504 N.W.2d 635, 642 (1993).

*Metropolitan Life Ins. Co. v. Mulligan,* 210 F.Supp.2d 894, 899 (E.D.Mich.2002). There is no allegation here that Mr. Shannon was fraudulently induced to part with his money, but fraud is not a necessary (although it may be a sufficient) element of a constructive trust. *See ibid.* (citing *Kent v. Klein,* 352 Mich. 652, 657, 91 N.W.2d 11, 14 (1958)); *In re Freedland's Estate,* 38 Mich.App. 592, 606–08, 197 N.W.2d 143, 150 (1972) (holding that an intended transfer of U.S. Savings Bonds by decedent to a charity, which was not effectuated due to Treasury Department regulations, gave rise to a constructive trust where "Michigan has for many years accepted the doctrine of constructive trusts as a means of

fulfilling the intent of a party where such intent has been frustrated through no fault of the party himself").

The claimant's argument apparently is that even if legal title to the cash was lodged in Ms. Reaves–Williamson by virtue of her possession of it, Mr. Shannon retained a beneficial interest in the funds because they were intended for his daughter's creditors—so she could pay her bills after her other assets were seized. It would be unconscionable, the argument goes, to allow her to retain the money for herself, and by extension the government's displacement of her as owner likewise would be unconscionable, as either party then would be unjustly enriched. This argument has some force. If Mr. Shannon transferred the two envelopes each containing $5,000 to his daughter within a few days of the traffic stop, those funds were still intact and identifiable since they had not been commingled with Reaves–Williamson's other assets. If Mr. Shannon intended the money to be used to reduce his daughter's debt to other creditors and consolidate her obligations in her father, it would be improper for her to spend the funds for personal use and increase her overall debt. A sensible argument can be made, therefore, that is was unconscionable for her to apply those funds to some other purpose.

In *In re Estate of Swantek,* 172 Mich. App. 509, 517, 432 N.W.2d 307, 311 (1988), the Michigan Court of Appeals stated:

"Constructive trusts are creatures of equity and their imposition makes the holder of the legal title the trustee for the benefit of another who in good conscience is entitled to the beneficial interest. They are distinguished from express and resulting trusts in that they do not arise by virtue of agreement or intention, but by operation of law." ... Constructive trust is the appropriate

remedy to prevent unjust enrichment of respondent in this case. *In re Estate of Swantek,* 172 Mich.App. 509, 517, 432 N.W.2d 307, 311 (1988) (quoting *Arndt v. Vos,* 83 Mich.App. 484, 487, 268 N.W.2d 693 (1978)). The described purpose of constructive trusts fits neatly into the facts of this case as the claimant posits them. The Court finds, therefore, that the claimant has made a colorable claim and can establish an ownership interest in the specific funds of which the government seeks forfeiture, or at least $10,000 of it.

However, the only ownership interest the claimant has suggested is to the money he gave to his daughter, which is limited to $10,000. He has made no discernable claim to the balance of the fund, which amounts to $1,331, and the Court finds that he has no standing to assert a claim to that amount in all events. Therefore, his claim to that portion of the funds will be struck, and default judgment of partial forfeiture in the amount of $1,331 will be entered in favor of the government. The government's motion to strike the claim and enter default judgment as to the remaining $10,000 will be denied.

### III.

The claimant has moved for summary judgment arguing that the government has not shown that the money is substantially connected to an illegal drug transaction. A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the " 'record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' " there is no genuine issue of material fact. *Simmons–Harris v. Zelman,* 234 F.3d 945, 951 (6th Cir.2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The claimant maintains that the government has not brought forth evidence that satisfies its statutory proves by a preponderance of the evidence. *See* 18 U.S.C. § 983(c)(1); 21 U.S.C. § 881(a)(6). The government argues that there is probable cause to believe Ms. Reaves–Williamson and Mr. Williamson are involved in drug activity. They had large sums of money, five cell phones, and expensive items in their home even though Ms. Reaves–Williamson had been unemployed for two years. A drug dog alerted positively to the presence of narcotics in Ms. Reaves–Williamson's vehicle, and something called an "ion scan" of the van Mr. Williamson was driving in Oklahoma was positive for cocaine.

■■■ There is considerable doubt based on the present record whether the government can meet its burden, which is cast in terms of the preponderance of the evidence, not probable cause as the government argues. 18 U.S.C. § 983(c)(1). "The burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence' " *United States v. Laughton,* 437 F.Supp.2d 665, 670–71 (E.D.Mich.2006) (quoting *Pipe and Products of California, Inc. v. Constr. Laborers Pension Trust for S. California,* 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)). Prior to

the 2000 amendments, the government only had to show probable cause. *See United States v. Real Property in Section 9*, 241 F.3d 796, 798 (6th Cir.2001) (remanding case for reconsideration under new standard).

■ First, the government cannot show that the money is traceable to a drug transaction, which is one of the grounds for forfeiture under 21 U.S.C. § 881(a)(6). The undisputed testimony shows that the claimant gave his daughter the money the day before it was seized. His bank records show that he withdrew a large amount a couple of days before that. The government has submitted absolutely no evidence to the contrary. They only say that since it is cash it could have come from anywhere. That may be true, but the undisputed evidence shows where it came from, and there is no reason to believe the claimant is involved in drugs.

Therefore the government must rely on the other provision of section 881(a)(6), which allows forfeiture of money "furnished or intended to be furnished by any person in exchange for a controlled substance." Again, the government has submitted no evidence that Ms. Reaves–Williamson intended to buy drugs with the money. There is no evidence in this record that Ms. Reaves–Williamson herself is involved in drugs transactions. Drugs were not found at her home, nor was any paraphernalia. The only questionable items found in their home were a .38 revolver and an Uzi magazine. Although guns and drugs frequently are found in the same place, there is no evidence in this case at the present time making the connection.

■ In addition, the amount of money itself is not evidence that Ms. Reaves–Williamson intended to buy drugs with it. Only very large amounts of money have been found suspicious when the person in possession was unable to account for its source. Here, the amount is only $10,000. Even greater amounts, "[f]ifteen to twenty thousand dollars[,] is hardly enough cash, standing alone, to justify more than a suspicion of illegal activity." *United States v. $5,000*, 40 F.3d 846, 850 (6th Cir.1994). Ms. Reaves–Williamson convincingly explained where the money came from. Moreover, a drug-detecting dog is alleged to have alerted to the car but not to the money itself. Even if the dog did alert to the money, the Sixth Circuit has held that "a court should 'seriously question the value of a dog's alert without other persuasive evidence.'" *United States v. $5000*, 40 F.3d 846, 849 (6th Cir.1994) (quoting *United States v. $80,760*, 781 F.Supp. 462, 475 & n. 32 (N.D.Tex.1991)). Here there is no other persuasive evidence. There is certainly not enough evidence to conclude that it is more probable than not that the money was intended to be used for drugs.

■ However, fact questions remain with respect to the other elements of the claimant's case. For one, he has not conclusively established standing because certain facts, which form the basis of his constructive trust theory, are subject to dispute. For instance, Mr. Shannon says that he withdrew money from his bank account to give to his daughter to pay her bills, which she could not do otherwise because the police had seized all her other assets. But the claimant withdrew the money on January 28, 2005 and gave the money to Ms. Reaves–Williamson on January 31, according to the testimony of Ms. Reaves–Williamson. However, her bank accounts were not seized until February 1, 2005. That leaves a question as to the credibility of the allegations undergirding the constructive trust theory. Courts may not resolve credibility issues on summary judgment. *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 886 (6th Cir.2007) (holding that "[w]eighing of the evidence

or making credibility determinations are prohibited at summary judgment—rather, all facts must be viewed in the light most favorable to the non-moving party"). The Court, therefore, will deny the claimant's motion for summary judgment.

## IV.

There remains the problem of the proper parties in this case. The attorney for the plaintiff stated on the record at the last hearing that her client died last summer, yet no one has made any effort to substitute a proper party in his place. Federal Rule of Civil Procedure 25 allows the Court to substitute "the proper parties" where death of a party does not extinguish the claim and upon proper motion:

(a) Death.

(1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

(2) In the event of the death of one or more of the plaintiffs or of one or more of the defendants in an action in which the right sought to be enforced survives only to the surviving plaintiffs or only against the surviving defendants, the action does not abate. The death shall be suggested upon the record and the action shall proceed in favor of or against the surviving parties.

Fed.R.Civ.P. 25(a). The capacity of an individual to sue is "determined by the law of the individual's domicile." Fed.R.Civ.P. 17(b). In Michigan, "[a]ll actions and claims survive death." Mich. Comp. Laws § 600.2921. In *United States v. Thirty Nine Thousand Dollars*, 2005 WL 2600217, *1 (W.D.Tenn.2005), the claim was made by the estate on behalf of a decedent.

■■■ More than ninety days has elapsed since Mr. Shannon's apparent death. However, no suggestion of death has been filed by either party. There is no time limit for doing so in the rule, and any party to the case may make the filing. A suggestion of death must be in writing and served on all parties, but mention of the death in the pleadings does not comply with the rule. *Blair v. Beech Aircraft Corp.*, 104 F.R.D. 21 (W.D.Pa.1984) (holding that "reference to the death of the Plaintiff in the pleadings is not sufficient"); *Acri v. Int'l Ass'n of Machinists*, 595 F.Supp. 326 (N.D.Cal.1983) (reference to death in "answers to interrogatories cited by defendants do not rise to the required level of formality"). Several courts have held that the decedent's attorney may not file the suggestion of death under the plain language of the rule since he is not a party and authority to represent the deceased terminated on death. *Rende v. Kay*, 415 F.2d 983 (D.C.Cir.1969) (holding that "the suggestion of death, which was neither filed by nor identified a successor or representative of the deceased, such as an executor or administrator, was ineffective to trigger the running of the 90–day period provided by the Rule"); *See also Al–Jundi v. Rockefeller*, 88 F.R.D. 244 (W.D.N.Y. 1980).

■■■ Nor has a motion to substitute parties been filed. Such a motion must be

filed by a party or the successors or representatives of the decedent, not an attorney for a party acting on his own. *Al–Jundi v. Rockefeller*, 88 F.R.D. 244, 246 (W.D.N.Y. 1980) (interpreting Rule 25 "as allowing a motion to substitute to be made either by the estate of the deceased party (presumably acting through counsel for the estate) or by any other party, but not by the deceased party herself or himself (acting through counsel)"). The motion must be filed within ninety days of the suggestion of death, or it can be filed even if no suggestion of death has been filed. "A motion to substitute may be made by any party or by the representative of the deceased party without awaiting the suggestion of death." Advisory Committee Note to 1963 amendment.

If a proper representative for the claimant has never been appointed by a state court, then perhaps the government ought to file a suggestion of death so that the ninety-day period under Rule 25(a) can commence. If the claimant's estate intends to pursue this claim further, then the Court directs counsel for the claimant to make appropriate arrangements and proceed with a proper motion for substitution. If no action is taken by either party within the next thirty days, then the Court will dismiss the case for want of prosecution.

## V.

The Court finds that the claimant has presented sufficient facts to establish standing to contest the forfeiture of $10,000 of the res at issue in this case. He has not shown standing as to balance, and the government's motion to strike the claim as to that amount will be granted. The claimant has not established an entitlement to the $10,000 as a matter of law. Nor has either party taken appropriate steps to address the death of Robert Shannon.

Accordingly, it is **ORDERED** that the plaintiff's motion to strike the claimant's answer and claim [dkt # 16] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that the claimant's motion for summary judgment [dkt # 18] is **DENIED.**

It is further **ORDERED** that the claimant's claim as to $1,331 of the funds subject to forfeiture is **STRICKEN** and partial default judgment in favor of the government as to that amount is **GRANTED.** Final judgment may be entered at the conclusion of the case.

It is further **ORDERED** that the parties shall take appropriate action to address the death of the claimant, Robert Shannon, to either substitute his estate as a party, or suggest his death upon the record to trigger the application of Federal Rule of Civil Procedure 25(a)(1) on or before April 27, 2007.